**AFFIDAVIT OF SPECIAL AGENT JOHN L. DUMAS**

I Special Agent John L. Dumas, depose and state as follows:

1. I am a Special Agent with United States Immigration and Customs Enforcement (I.C.E.) and have been so employed since September of 2004. I have been a full-time law enforcement officer since 1993 and I am a graduate of the Maine Criminal Justice Academy and the Federal Law Enforcement Training Center. I am currently assigned to the Document and Benefit Fraud Group within the Boston office of I.C.E. where, among other duties, I investigate the manufacture and sale of fraudulent Immigration and Naturalization Resident Alien Cards (Form I-551 cards, more commonly referred to as "green cards"). From my education, training and experience, I know that persons, frequently illegal aliens, manufacture and distribute counterfeit green cards, social security account number cards and other false identification documents to aliens illegally in the United States. I am familiar with the various criminal statutes which make it unlawful to manufacture and sell fraudulent identity documents.

2. This affidavit is based upon my personal knowledge, information provided to me by fellow I.C.E. Agents and other law enforcement officers, as well as information provided to me by a confidential source. This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have

learned during this investigation. Rather, it is submitted as an application in support of probable cause for a criminal complaint against Sergio Lucas, DOB: 11-28-1975, charging him with transferring fraudulent identification documents in violation of 18 U.S.C. §1028(a)(2).

**BACKGROUND**

3. In February of 2005, confidential source SA-596-BO, hereafter referred to as "CS", provided information to the Boston I.C.E. office regarding a Brazilian male known only as "Sergio" who was producing and selling counterfeit identity documents including counterfeit green cards and social security cards. CS provided cellular telephone number 781-901-1497 as the contact number for Sergio. Sergio has been subsequently identified through fingerprints and a photograph as Sergio Lucas, DOB: 11-28-1975,("LUCAS").

4. On March 2, 2005, CS made a monitored and recorded telephone call to LUCAS at 781-901-1497 to inquire about purchasing counterfeit documents. According to CS, a Brazilian male who identified himself as "Sergio"(LUCAS)informed CS that he was able to accommodate the request and quoted a price of $150.00 per "set" of documents. A set of documents usually includes one green card and one social security card. CS agreed and informed LUCAS that he/she would call back in the future. The call was then terminated.

**THE DOCUMENT PURCHASE**

5.  On May 9, 2005, at approximately 1:47 p.m., CS placed a monitored and recorded telephone call to LUCAS at the aforementioned telephone number. According to CS, LUCAS agreed to the request of CS to purchase two sets of counterfeit documents. A meeting was scheduled for May 10, 2005 at the Home Depot store parking lot located on Route 228 in Rockland, Massachusetts at 6:30 p.m. The call was then terminated.

6.  On May 10, 2005, at approximately 5:45 p.m., I, along with other I.C.E. Agents, met with CS at a pre-arranged location to prepare for the scheduled undercover meeting with LUCAS.

7.  At approximately 5:50 p.m., CS made a monitored and recorded telephone call to LUCAS. According to CS, LUCAS wished to change the meeting spot from the Home Depot parking lot to the parking lot of the Motel 6 located off exit 17 of Route 3 in Braintree, Massachusetts. CS agreed and the call was terminated.

8.  During the briefing, I searched CS and CS' vehicle for contraband. None was found. In addition, I provided CS with two (2) green card-style photographs and fictitious biographical information that CS wrote on the back of each photograph. I also equipped CS with an electronic transmitter and recorder to monitor and record the meeting.

I further gave the CS $300.00 in official funds to purchase the counterfeit documents.

9. At approximately 6:00 p.m., I.C.E. Agents began surveillance in the area of the Motel 6 located at 128 Union Street in Braintree, Massachusetts.

10. At approximately 6:30 p.m., CS received a call from LUCAS on the undercover cell phone I.C.E. provided to CS. According to CS, LUCAS asked when CS was going to arrive. CS told LUCAS he/she would be there in about five minutes.

11. At approximately 6:37 p.m., CS, driving its car, arrived in the parking lot of the motel. The CS was followed to the motel parking lot by another car driven by ICE Special Agent Matthew McCarthy.

12. At approximately 6:39 p.m., I observed a male, whom I recognized as LUCAS, walk across the parking lot and enter CS' vehicle.

13. According to CS, during the meeting he/she provided LUCAS with the two green card-style photographs with fictitious biographical information written on the back. CS also asked LUCAS about the possibility of purchasing counterfeit Brazilian passports. LUCAS informed CS that that was a service that he could provide. LUCAS told CS that the cost was six-hundred dollars per passport. LUCAS said that CS needed to provide him with a photograph and the money. Lucas stated that he would send the photo to

4

Brazil and would receive the passport in about two weeks. LUCAS told CS that the current order for the two sets of documents would be ready at around 8:00 p.m. The meeting ended at approximately 6:44 p.m.

14.  I.C.E. Special Agent Seth Plumb observed LUCAS walk across the parking lot and enter a Plymouth Voyager minivan occupied by an unidentified female.

15.  At approximately 6:52 p.m., Special Agent Plumb observed LUCAS and the female exit the van and enter room 116 of the Motel 6. Special Agent Plumb maintained constant surveillance on room 116 and saw no other person either enter or exit the room.

16.  CS then drove to a prearranged location. At approximately 7:38 p.m., CS received a telephone call from LUCAS on the undercover cellular telephone. LUCAS told CS that the documents were ready to be picked up. This call was not recorded. I then conducted another search of CS and CS' vehicle for contraband. None was found.

17.  I then followed CS to the Motel 6 parking lot, arriving at approximately 7:50 p.m.

18.  I.C.E. Special Agent Dana Fiandaca videotaped LUCAS as he and his female companion exited room 116 and walked across the parking lot to meet with the CS. Special Agent Fiandaca was not able to videotape the actual meeting.

19. At approximately 7:53.p.m., Special Agent Plumb observed LUCAS enter the CS's vehicle. The female stood outside next to the vehicle. According to CS, during the meeting LUCAS gave CS the two sets of completed fraudulent green cards and social security cards. CS gave LUCAS two-hundred-and-eighty dollars ($280.00) of the official funds. At approximately 7:57 p.m., the meeting ended. Special Agent Plumb observed LUCAS exit the vehicle and walk off with the female in the direction of a Bickford's restaurant located adjacent to the motel.

20. Shortly after the transaction, Special Agent Plumb and I met with CS at a prearranged location to take custody of the documents and debrief the CS. Upon arrival, CS gave me the documents as well as twenty dollars ($20.00) in official funds that was not used. An examination of the documents revealed that the photographs and biographical information on the documents were the same photographs and biographical information I had earlier provided to the CS. During the debriefing, CS told us that during the transaction LUCAS had told CS that he had recently moved to New Jersey and that he was only in the area for a short time to settle unfinished business.

21. In addition to the aforementioned purchase, CS has made two other purchases of the same kind of fraudulent documents from LUCAS. The purchases occurred on March 9, 2005 and on March 24, 2005. Both of these purchases took

place in the Home Depot parking lot located on Route 228 in Rockland Massachusetts. On both occasions, I.C.E. Agents followed LUCAS from Home Depot directly back to 30 Shawmut Street in Weymouth, Massachusetts and from 30 Shawmut Street back to the Home Depot. I.C.E. Agents made video and audio recordings of the two previous transactions between CS and LUCAS. On January 16, 2005, Customs and Border Protection Officers at the international mail facility located at the John F. Kennedy airport in New York intercepted and seized six counterfeit Brazilian passports addressed to 30 Shawmut Street in Weymouth, Massachusetts.

22. I have received a total of eight (8) sets of documents (eight (8) green cards, and eight (8) social security cards) that CS has purchased from LUCAS. I have analyzed the documents and determined that they are counterfeit. A review of I.C.E. and Social Security Administration databases reveals that the alien registration numbers and social security account numbers appearing on the documents are either invalid or belong to individuals other than those named on the documents.

23. On May 11, 2005, at approximately 6:00 a.m., I and other I.C.E. agents established surveillance on room 116 of the Motel 6 on Union Street in Braintree.

24. At approximately 7:10 a.m., with the assistance of the Motel front desk clerk, we utilized a ruse to have LUCAS come out of the room. (At my request, the clerk telephoned

Lucas and told him that his car, which was parked in the motel parking lot, had been hit by another car). When LUCAS opened the motel door to leave the room, Special Agent Fiandaca and I greeted him and identified ourselves as Federal Immigration Agents. Special Agent Augusto DaCunha, who was also present, and who is fluent in Portuguese, translated. LUCAS admitted that he was in the United States illegally and that he had entered by crossing the Mexican Border. He stated that his name was Sergio Lucas. Special Agent DaCunha then advised LUCAS of his rights. As we stood outside of the room and spoke with LUCAS, I could see in plain view inside of the room a computer, a cutting board, and a printer. LUCAS gave us written consent to search his room and we seized the following items: a laptop computer, a printer, a scanner, paper cutters, a digital camera and four pieces of counterfeit identification of unknown persons. Inside of LUCAS's wallet which, was found on the dresser inside LUCAS' motel room, I discovered two-hundred-and-eighty-eight dollars in United States currency. I later compared the serial numbers on the money to the serial numbers of the currency from the official funds used by CS to purchase the counterfeit documents the previous night. I discovered that two-hundred-and-thirty dollars of the money in LUCAS's wallet was from the official funds. This money was seized as evidence.

25. Upon arrival at the I.C.E. Boston field office, Special Agent DaCunha and I brought LUCAS to an interview room where he was again advised of his Miranda rights in Portuguese. During the subsequent interview, LUCAS told us that he had been living at 30 Shawmut Street in Weymouth for approximately nine (9) months until he moved to New Jersey "about forty days ago". LUCAS stated that he had been producing false identity documents for about the previous three months. LUCAS estimated that he had manufactured over one hundred (100) sets of documents. LUCAS told us that he made various types of documents including: green cards, social security cards and Brazilian drivers' licenses. LUCAS also admitted that he had been involved in the sale of counterfeit Brazilian passports. LUCAS claimed that his roommate at 30 Shawmut Street, named Romero, was more heavily involved in passport sales than he was. LUCAS said that in the time that he lived there, he had opened several packages from Brazil addressed to 30 Shawmut Street and had seen approximately fifteen (15) counterfeit passports. LUCAS said that at the request of Romero, he had on several occasions delivered counterfeit passports to individuals and received money that he, in turn, gave to Romero.

26. Based on the foregoing, there is probable cause to conclude that on May 10, 2005, Sergio LUCAS did knowingly transfer false identification documents knowing that the

documents were produced without lawful authority, in violation of Title 18 U.S.C. §1028(a)(2).

*[signature]*
JOHN L. DUMAS
Special Agent
Immigration and
Customs Enforcement

Subscribed and sworn before me this 23rd day of May, 2005.

*[signature]* Marianne B. Bowler, USMJ
MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE